# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

KYLE THOMPSON,                           :

                   Plaintiff,

      -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.        :

Case No. 3:07-cv-165

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on March 5, 2003, alleging disability from September 2, 2002, due to general weakness, dehydration, a heart impairment, cirrhosis of the liver, and anxiety. (Tr. 54-56; 339-47; 72-81). Plaintiff's applications were denied initially and on reconsideration. (Tr. 37-40; 42-44). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 355-77), who determined that Plaintiff is not disabled. (Tr. 12-28). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe history of substance addiction in reported remission, lower extremity alcoholic neuropathy, dysthymia/depression, and cognitive disorder NOS, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 27, finding 3). Judge Padilla then found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* findings 4, 7. Judge Padilla then used sections 203.14 through 203.17 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 28, findings 11, 12). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28).

Plaintiff was hospitalized on October 17-22, 2002, for treatment of alcohol withdrawal. (Tr. 115-33). During that hospitalization treating physician Dr. Reyes reported that Plaintiff had been drinking five to twelve beers a day until the morning of his admission when he

had only one beer.  *Id.*  Dr. Reyes also noted that Plaintiff's liver enzymes were elevated, he was shaky with an unsteady gait and tremors, and that Plaintiff was an alcoholic.  *Id.*  Plaintiff was treated with medications and was discharged with the final diagnosis of acute withdrawal, tremors, and with the secondary diagnoses of generalized weakness, malnutrition, dehydration, cirrhosis of the liver secondary to alcoholism, chronic and acute, sustained ventricular tachycardia, and hyponatremia.  *Id.*

A July 18, 2003, MRI of Plaintiff's lumbar spine revealed mild broad based posterior bulging of the L2-L3 and L3-L4 discs, mild central posterior bulging of the L5-S1 disc, and evidence of spinal stenosis at the L4-L5 level.  (Tr. 139).  A July 29, 2003, EMG revealed moderately severe peripheral neuropathy.  (Tr. 137-38).

On July 7, 2003, physical medicine specialist Dr. Duritsch reported that Plaintiff had been a resident of Sydney Care Center since September or October, 2002, had a history of low back pain for five years, that the symptoms worsened in September or October of 2002, when he fell onto his knees, and that he had a history of alcoholism.  (Tr. 142-44). Dr. Duritsch also reported that Plaintiff was able to walk easily and freely, had a wide-based gait, his Romberg's sign was grossly positive, he was able to mount and dismount the examination table, and that there was tenderness overlying the L4 and L5 spinous processes as well as mild tenderness to palpation of the left sacroiliac joint.  *Id.*  Dr. Duritsch noted that Plaintiff's strength was 5/5 in the bilateral lower limbs, his sensation was intact, deep tendon reflexes were 1+ and symmetrical in the upper and lower limbs, and that thoracolumbar ranges of motion were somewhat decreased.  *Id.*  Dr. Duritsch noted further that Plaintiff's diagnoses were low back pain likely secondary to a combination of L4-L5 degenerative disc disease and mild spondylolisthesis, and leg numbness and gait abnormality most

5

likely from peripheral neuropathy from alcohol use. *Id.*

Examining psychologist Dr. Boerger reported on August 25, 2003, that Plaintiff graduated from high school, he stopped drinking last year, that alcohol has been a problem off and on through his life until he stopped drinking last year, he displayed some trouble with recall of information from his history, he initially displayed some slurring of his speech, and that he did not appear to be intoxicated. (Tr. 145-51). Dr. Boerger also reported that Plaintiff's affect was appropriate, he took medication for anxiety, indicated no significant somatic concerns or preoccupation, was alert and oriented, denied having problems with his memory, but did have some difficulty with related details of his history, and that he resided in a nursing home. *Id.* Dr. Boerger noted that Plaintiff's verbal IQ was 80, his performance IQ was 80, his full scale IQ was 78, that he read at the 6.3 grade level, memory testing revealed that his memory was in the borderline to low-average range, and that his diagnoses were cognitive disorder NOS and alcohol dependence in remission. *Id.* Dr. Boerger assigned Plaintiff a GAF of 53 and opined that Plaintiff's ability to relate to others might be mildly to moderately impaired, his ability to understand and follow instructions was moderately impaired, his ability to maintain attention to perform simple repetitive tasks was moderately to markedly impaired, his ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired, and that should benefits be granted, a representative payee should be appointed. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Genesis Rehabilitation Services dated October 23, 2002, through August 29, 2003. (Tr. 152-92). These treatment notes reveal that during that period of time, Plaintiff participated in a physical therapy program, met his goals, reported a decreased overall pain in his right lower back although he

continued to have pain sensation down his right leg with movement, and that he was discharged from the program after making good progress. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Sydney Care Center dated October 22, 2002, through December 1, 2003. (Tr. 197-236). On April 7, 2003, Dr. Reyes reported that Plaintiff's diagnoses were low back pain, peripheral polyneuropathy, chronic obstructive pulmonary disease, hepatitis, cirrhosis of the liver, and anxiety. *Id.* Dr. Reyes reported that Plaintiff had persistent low back pain and had difficulty getting up and out of bed. *Id.* Dr. Reyes also reported that Plaintiff used a wheelchair to get around and that he was able to stoop over 30 degrees at the lumbosacral junction. *Id.* On December 9, 2003, Dr. Reyes reported that Plaintiff's diagnoses were low back pain, dizziness, nicotine dependency, and benign prostatic hypertrophy. *Id.* Dr. Reyes also noted that Plaintiff had low back pain and got dizzy on and off, that he used a wheel chair to get around and that he was able to stoop over 30 degrees at the lumbosacral junction. *Id.*

Plaintiff again participated in physical therapy at Genesis Rehabilitation Services during the period March 1 through August 3, 2004. (Tr. 256-83). The notes from that course of treatment reveal that Plaintiff tolerated physical therapy well, that his flexibility improved significantly, and that he met the goals of therapy. *Id.*

Plaintiff continued to reside at the Sydney Care Center and the record contains his residential/treatment notes dated January 14 through October 14, 2004. (Tr. 284-300). During that period of time, Plaintiff was treated for various medical conditions and complaints including low back pain, recurrent muscle spasms, depression, anxiety, agitation, dementia, personality disorder, sexual impotence, and schizophrenia. *Id.*

7

On March 15, 2004, Dr. Reyes reported that Plaintiff's diagnoses included chronic low back pain, agitation, dementia, nicotine dependency, and chronic obstructive pulmonary disease, that Plaintiff may need a guardian, that he was able to stand/walk for less than one hour in an eight hour day and for less than thirty minutes without interruption, that he was able to sit for less than one hour in an eight hour day and for less than thirty minutes without interruption, that he was able to lift/carry up to five pounds frequently, and that he was unemployable. (Tr. 306-08).

On December 4, 2004, Dr. Reyes reported that Plaintiff was able to lift and carry up to five pounds occasionally and up to two pounds frequently, that he was able to sit for less than one hour in an eight hour day and for one-half hour without interruption, that he could never climb or balance, that he was unable to perform light or sedentary work, and that he was disabled. (Tr. 301-305).

Plaintiff received mental health treatment at the Shelby County Counseling Center where Dr. Pan was his treating psychiatrist during the period March 25, 2004, through January 7, 2005. (Tr. 309-16). On January 7, 2005, Dr. Pan reported that Plaintiff's abilities to make occupational, performance, and personal-social adjustments were fair to good. *Id.*

Plaintiff continued to reside at the Sydney Care Center until December 30, 2004, at which time he was discharged when he got married. (Tr. 328-38). At the time of his discharge, it was noted that Plaintiff had gotten married the morning of his discharge, that the goals of his therapy were met, that he would use a TENS unit after discharge, and that he would join in activities of his choice after discharge. *Id.*

Plaintiff continued to receive medical treatment from Dr. Reyes during the period, December 3, 2004, through June 14, 2005. (Tr. 317-27). During that period of time, Dr. Reyes

identified Plaintiff's diagnoses as low back pain, muscle spasm, nicotine dependency, agitation, possible schizophrenia, and sexual difficulty. *Id.* In March, 2005, Dr. Reyes noted that Plaintiff's back pain was better and that he was doing fairly well. *Id.*

In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his mental impairment. (Doc. 8). With respect to his exertional impairments, Plaintiff alleges that the Commissioner erred in failing to find that he had a severe back impairment and by failing to give the proper evidentiary weight to Dr. Reyes' opinion. *Id.*

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

Although Judge Padilla did not find that Plaintiff has a severe back impairment, he did not commit reversible error by failing to do so. Rather, Judge Padilla found that Plaintiff has other severe impairments including a history of substance addiction in reported remission, lower extremity alcoholic neuropathy, dysthymia/depression, and cognitive disorder NOS. Judge Padilla then continued through to step five of the sequential evaluation process before finding that Plaintiff

is not disabled.

In addition, Judge Padilla did consider Plaintiff's allegations of back pain when he limited Plaintiff to a range of medium work.  See Tr. 22.  Judge Padilla noted that physical therapy notes indicated that Plaintiff had tolerated therapy well, had improved flexibility, had met all of his goals, and that he had reached the highest level of functioning.  In addition, Judge Padilla noted that the record contains evidence of few, if any, neurological deficits, that his limping was attributed to his alcoholic neuropathy, and that Plaintiff engaged in a wide variety of activities including doing household chores, driving, vacuuming, shopping, making the bed, going out to eat, watching television, cooking, washing dishes, visiting others, and doing a home exercise program.  See Tr. 358-69.  Further, Judge Padilla noted that the MRI of record indicated, at worst, mild findings.

Plaintiff argues next that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Reyes' opinion as to his residual functional capacity.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir.  2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502).  However, a treating physician's statement that a claimant is

disabled is of course not determinative of the ultimate issue.  *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986).  A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993).  A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability.  *Id.*  Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Although Dr. Reyes essentially reported that Plaintiff had the residual functional capacity to perform, at best, sedentary work, the Commissioner had an adequate basis for rejecting that opinion.  First, as noted above, the objective medical test results reveal, at worst, mild findings. In addition, the records from Plaintiff's physical therapy treatment reveal that Plaintiff's flexibility improved, he met all the goals that had been set, and he reached the highest level of functioning. Moreover, Dr. Reyes' own reports and clinical notes do not support his opinion as to Plaintiff's residual functional capacity.  For example, in July, 2003, Dr. Reyes indicated that Plaintiff's back

11

pain was much better and he was ready to go home.  (Tr. 208).[1]  Further, in July, 2004, Dr. Reyes refused to give Plaintiff "a disability card" noting that Plaintiff was able to walk when he wanted to, removed his TENS unit most of the time, and threatened to get another physician if Dr. Reyes did not give him the card.  See Tr. 288.  In addition, in December, 2004, Dr. Reyes did not provide any clinical findings to support his opinion as to Plaintiff's residual functional capacity and simply listed Plaintiff's alleged diagnoses.  See Tr. 306-08.  Again, in December, 2004, Dr. Reyes failed to provide any clinical findings to support his opinion.  See Tr. 301-05.  Dr. Reyes' opinion is also inconsistent with the other medical evidence of record.  First, examining physician Dr. Duritsch noted that Plaintiff was able to walk freely and easily,  mount and dismount the examination table, had, at worst, mild findings, and that he had normal strength, sensation and reflexes.  Finally, Dr. Reyes' opinion is inconsistent with the reviewing physician's opinion. Tr. 195.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."  *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

---

[1]  The Court notes that Plaintiff resided in the Sidney Care Center for an extended period of time because he had no place to go until he married his girlfriend and moved in with her.  *See, e.g.,* Tr. 292; 332-33.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 3, 2007.

s/ Michael R. Merz
Chief United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).